**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION/IBT,
41475 Gardenbrook Rd.
Novi, MI 48375

*Plaintiff*,

v.

NATIONAL RAILROAD PASSENGER CORPORATION,d/b/a AMTRAK
60 Massachusetts Avenue, N.E.
Washington, D.C. 20002

*Defendant.*

Case No.:

# COMPLAINT

The Brotherhood of Maintenance of Way Employes Division/IBT(“BMWED”) brings this Complaint against the National Railroad Passenger Corporation, (“Amtrak” or “Carrier”), for a declaratory order that Amtrak has violated Section 2, Seventh of the Railway Labor Act (“RLA”), 45 U.S.C. §§ 152, Seventh, by unilaterally changing and abrogating agreements between the parties by contracting-out certain work in blatant disregard for a collective bargaining agreement provision reserving that work to BMWED represented employees unless the Union concurs in the plan, as well as an agreement specific to the project for which the contracted work would be performed.

## Parties

1. The BMWED is an unincorporated labor association that maintains its headquarters in Novi, Michigan. The BMWED is the duly designated representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of employees of Amtrak working in the class or craft of maintenance of way employee. On January 1, 2005, the BMWED became an autonomous division of the International Brotherhood of Teamsters. Prior to that date, the BMWED was an international union founded in 1887 that went by the name Brotherhood of Maintenance of Way Employes ("BMWE").

2. Amtrak is a rail carrier as that term is defined in Section 1, First of the RLA, 45 U.S.C. §151, First. Amtrak conducts rail operations throughout the contiguous United States and portions of Canada. Amtrak is a partially government-funded corporation that maintains its headquarters in Washington, DC.

## Jurisdiction and Venue

3. This Court has jurisdiction over this complaint pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the RLA, an act of Congress regulating interstate commerce. The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) and (c) because Amtrak owns and operates lines of railroad within this District and is headquartered in this district.

## Statement of Claim

5. Among other things, Amtrak's maintenance of way employees represented by BMWED are responsible for constructing, repairing, rehabilitating, upgrading, renewing,

inspecting and maintaining the Carrier's track and right of way, as well as bridges, buildings, and other structures.

6. BMWED and Amtrak, are parties to a collective bargaining agreement that establishes and governs the rates of pay, rules, and working conditions of Amtrak employees working in the Maintenance of Way craft/class on the Northeast Corridor ("CBA").

7. The "Scope Rule" of the CBA as amended in 1987, provides that the CBA is the agreement between Amtrak and its employees represented by the BMWED who perform work "generally recognized as Maintenance of Way work, such as inspection, construction, repairs and maintenance of water facilities, bridges, culverts, buildings and other structures, tracks, fences, and roadbed ... and shall govern the rates of pay, rules and working conditions of such employees".

8. The Scope Rule further states that if Amtrak seeks to contract-out Scope work, Amtrak shall notify the appropriate BMWED General Chairman at least fifteen days in advance of doing so. Section 1 of the Scope Rule provides that "[e]ffective March 2, 1987, the following work may not be contracted out without the written concurrence, except in the case of emergency, of the appropriate General Chairman. (1) Track inspection, maintenance, construction, or repair from four (4) inches below the base of the tie up, and undercutting...(3) Bridge and Building inspection, maintenance, construction, or repair of the type being performed by Amtrak forces under the scope of this Agreement on January 1, 1987, specifically excluding major construction projects and non-railroad projects".

9. Pursuant to Section 1. B of the Scope Rule, General Chairman concurrence for contracting-out is not required "where time of completion for the work, as determined prior to

the start of construction projects...cannot be met for the following reasons: (1) Lack of available skilled manpower....(2) Lack of essential equipment. However, Side letter No. 2 to the CBA, dated January 22, 1987, provides that this Section 1. B exception to the requirement for General Chairman approval for contracting-out “will not apply to work of the scope and magnitude historically performed by members represented by the BMWE”

10. Side Letter No. 2 also states that “it is the Carrier’s intent to preserve work of the scope and magnitude historically performed by members of the BMWE for the Carrier as of January 1, 1987, or prior thereto”.

11. Since January 1, 1987 all wood and concrete ties installed on Amtrak property covered by the CBA have been installed by BMWED forces, except when BMWED has provided written concurrence to the use of other than BMWED forces.

12. On May 28, 2014, Amtrak wrote to BMWED Northeast System Federation General Chairman Dale Bogart stating that Amtrak intended to use a contractor to perform certain work “on the Kingston Sation Capacity Improvement project” that would include track construction work. Amtrak asserted that the work involved was covered under Section 1 of the Scope Rule and in addition to work proposed to be performed by contractor forces, BMWED forces would perform the “installation of approx. 2.5 miles of new track and switches”. The letter further stated that “project work is anticipated to start by July of 2014, and continue through the year 2016".

13. General Chairman Bogart sought a meeting pursuant to Section 1 of the Scope Rule, the parties met on June 20, 2014 and on September 19, 2014, Amtrak issued a letter confirming

that for the Kingston project, BMWED forces would perform certain work including "installation of approx. 2.5 miles of new track and switches, etc."

14. Following issuance of the September 19, 2014 letter through 2016, Amtrak performed no track construction or installation work for the Kingston project. In early 2017, Amtrak did perform some switch construction, but no regular track installation.

15. In March of 2017, General Chairman Bogart learned that Amtrak was considering utilizing a HARSCO Track Laying Machine ("TLM"), which would be staffed by HARSCO forces, to perform the work of installing/constructing between 1.8 and 2.5 miles of track for the Kingston project, which is work that Amtrak committed to be performed by Amtrak forces by Amtrak's letter of September 19, 2014.

16. After an inquiry by General Chairman Bogart, Amtrak sent him an email on March 16, 2017 stating that Amtrak sought to "modify[] our existing Labor Clearance Agreement for the Kingston Station Project" to "allow Amtrak to use the HARSCO Track Construction Machine (TCM) at Kingston, RI". The email stated that "[w]hile the Carrier is mindful of its prior Labor Clearance commitment to use BMWE forces to install 2.5 miles of new track at Kingston, the Carrier would like to use the Harsco TCM sometime in mid-May/2017 for about a week to complete approximately 1.8 miles of new track". The email noted that the TCM was being used on the Springfield Project but would have "down time" there, so it could be sent to Kingston during that down time. Amtrak offered certain additional compensation for BMWED forces involved in the project in return for BMWED's agreement for the proposed modification of the Labor Clearance Agreement.

17. On March 24, 2017, General Chairman Bogart wrote to Amtrak rejecting Amtrak's proposal to amend the understanding previously reached for Kingston Project to allow the use of the contractor machine and forces. General Chairman Bogart also refused to consent to the use of a contractor and contractor forces for the track construction work under the CBA. Among other things, General Chairman Bogart noted that nearly two and a half years after Amtrak committed that BMWED forces would perform the track construction work, the Carrier was seeking to contract-out that work, even though track construction work for the project had not been assigned to BMWED forces during that period. General Chairman Bogart stated that he remained open to discussing the Carrier's proposal, but he rejected the offer that had been made by Amtrak.

18. On April 13, 2017, Amtrak sent a letter to General Chairman Bogart with the subject heading "Supplemental Notice" that purported to invoke an Equipment Rental Agreement entered prior to the 1987 amendment of the CBA regarding contracting-out Scope work, assertedly to provide notice under the 1977 Equipment Rental Agreement of Amtrak's intent to "rent and/or lease" the contractor's TLM Machine to construct approximately 1.8 miles of new track for the Kingston project. The April 13 letter stated that the TLM machine was being used for work on the Springfield line, but "there is a limited window of availability to use the HARSCO machine for the Kingston Project track work". Amtrak advised that track construction to be performed by HARSCO using its TLM and its forces was scheduled to begin by May 15, 2017.

19. By letter of April 21, 2017, General Chairman Bogart wrote to Amtrak: a) reiterating the Union's opposition to Amtrak's plan to utilize the TLM and HARSCO forces to perform the

track installation work for the Kingston project that Amtrak committed would be done by BMWED forces; b) asserting that Amtrak was acting in bad faith and reneging on its prior commitments that were a result of good faith negotiations by BMWED; c) stating that the Carrier had absolutely no right to bring the TLM and contractor forces on the property to perform track construction without General Chairman concurrence, that had not been, and would not be, given; d) advising that if Amtrak proceeded as indicated in the April 13 letter, the Union would treat that action as a unilateral change to the CBA and the agreement set forth in the September 19, 2014 letter; and e) advising that BMWED would exert every legal option under the Railway Labor Act to ensure compliance with the agreements. General Chairman Bogart closed by asking that he be notified of Amtrak's intentions in this matter.

20. As of the date of this complaint, General Chairman Bogart has received no response to his April 21 letter.

21. To BMWED's current knowledge, Amtrak intends to bring the TLM machine and HARSCO forces onto the property to perform track construction and installation for the Kingston project on or before May 15, 2017.

## FIRST CAUSE OF ACTION

22. BMWED incorporates by reference, as if fully set forth herein, each and every allegation of paragraphs 1 through 21.

23. Section 2, Seventh of the RLA, 45 U.S.C. §152, Seventh, provides: "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

24. Section 6 of the RLA, 45 U.S.C. § 156, provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in the agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

25. The Scope Rule of the CBA, and Side Letter No. 2 unambiguously provide that track construction work, like the Kingston project track installation, may not be contracted out without the written concurrence of the appropriate General Chairman, except in cases of emergency. There is no emergency in the instant case.

26. The exception to the Scope rule requirement for General Chairman concurrence for contracting-out in circumstances when the time for completion of the work determined prior to the start of the project cannot be met due to lack of available skilled manpower or lack of essential equipment under Section 1. B of the Scoep Rule is plainly inapplicable to the plan to contract-out the track construction/installation work for the Kingston project because the work involved is "work of the scope and magnitude historically performed by members of the" Union under Side Letter No. 2. In any event, the bases for exception to the requirement for General Chairman concurrence for contracting-out under Section 1. B are plainly not satisfied in the instant case.

27. Apart from the requirements of the Scope Rule, Amtrak entered an agreement specific to the Kingston project in which it agreed that the track construction/installation work would be performed by BMWED forces.

28. By utilizing a contractor and contractor forces to perform the Kingston project track construction/installation work, Amtrak has effectively rejected, abrogated, and changed its agreements with BMWED not "in the manner prescribed in such agreement[] or in section 156 of" the RLA, and therefore in violation of Section 2, Seventh of the RLA.

## REQUEST FOR RELIEF

WHEREFORE, the BMWED respectfully requests that the Court

A. DECLARE that by utilizing a contractor and contractor forces to perform the Kingston project track construction/installation work, Amtrak has effectively rejected, abrogated, and changed its agreements with BMWED in violation of Section 2, Seventh of the RLA;

B. GRANT the BMWED reasonable attorneys' fees and the costs of this action;

C. GRANT the BMWED all other relief that the Court deems just and proper.

Respectfully submitted,

/s/ Richard S. Edelman
Richard S. Edelman
D.C. Bar No. 416348
Mooney, Green, Saindon, Murphy &
Welch, P.C.
1920 L Street NW, Suite 400
Washington, DC 20036
(202) 783-0010
Redelman@MooneyGreen.com